IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **RHEA FOGGIE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   CA # |
| | ) |
| | ) |
| **AMERICAN NATIONAL RED CROSS** | ) |
| **LONG TERM DISABILITY PLAN** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT FOR
## DISABILITY BENEFITS UNDER ERISA

### JURISDICTION AND VENUE

1.  Plaintiff, Rhea Foggie, brings her claims against Defendant, American National Red Cross, pursuant to the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et. seq.* (herein "ERISA").

2.  Ms. Foggie seeks an Order that clarifies her plan beneficiary's rights to past and future benefits under the terms of an employee welfare plan. Specifically, she seeks: a) a declaration and enforcement of her rights under the employee benefits plan at issue (which is an "employee welfare benefit plan" as defined by ERISA), b) a reinstatement of benefits, c) the payment of all back benefits due with pre-judgment and post-judgment interest, d) the enforcement of rights under the employee benefits plan, e) the clarification of rights to future benefits under the employee benefits plan pursuant to 29 U.S.C. § 1132(a)(1)(B) and (a)(3),  and f) an award of attorney's fees and costs.

3.      Ms. Foggie lives in Virginia and venue and jurisdiction are proper pursuant to 29 U.S.C. § 1132(f).

## PARTIES

4.      Ms. Foggie is a former employee of the American National Red Cross ("Employer" or "Red Cross"). While employed there, and while covered by the Group Long Term Disability Plan ("The Plan") for employees of the Red Cross, she became disabled as that term is defined by the Plan.

5.      The Red Cross Long Term Disability Plan ("The Plan") is an employee welfare benefit plan established under ERISA.

6.      Over the course of her disability, which began in February 2006, Ms. Foggie's claim was handled by three separate insurers which the Red Cross contracted at various times during the administration of her claim to act as the "Claims Administrator" for the Plan. These three Claims Administrators acted for the Plan and were fiduciaries or "deemed fiduciaries" under the Plan.

7.      When Ms. Foggie first made her claim for benefits under the Plan in February 2006, her claim was approved and administered by Aetna Life Insurance Company ("Aetna") who was the Claims Administrator at that time.

8.      Beginning January 1, 2008, Metropolitan Life Insurance Company ("MetLife") took over the claim and acted as Claims Administrator.

9.      Beginning in December 2016 Liberty Life Assurance Company of Boston (also doing business as "Lincoln Financial Group," referred to herein as "Lincoln") took over the claim and acted as Claims Administrator.

10. Lincoln was Claims Administrator at the time benefits were terminated, which is what has led to this lawsuit.

11. The Red Cross is responsible for the actions of each of its fiduciaries and "deemed fiduciaries."

## THE EMPLOYEE WELFARE BENEFIT PLAN

12. The Red Cross has delegated disability claims administration to Lincoln.

13. The Red Cross, Aetna, MetLife, and Lincoln are fiduciaries pursuant to 29 U.S.C. § 1133(2) and 29 C.F.R. § 2560.503-1(g) (1999) and/or "deemed fiduciaries" pursuant to 29 U.S.C. § 1002(21)(A) and 29 C.F.R. § 2560.503-1(g)(2) (1999).

14. Lincoln, upon information and belief, has made the decisions regarding the termination of Ms. Foggie's claim for disability benefits in this case.

## HISTORY OF THE CLAIM

15. Ms. Foggie worked for the Red Cross until she became disabled in February 2006 due to, *inter alia*, osteoarthritis, degenerative joint disease, neck pain, pain in her extremities, knee pain, lumbar spondylosis, chronic back pain, fibromyalgia and chronic pain syndrome.

16. Effective June 2006, Ms. Foggie was awarded Social Security Disability Income benefits by the Social Security Administration.

17. Upon exhaustion of short term disability (STD) benefits, The Plan began paying long term disability (LTD) benefits on August 17, 2006 because Ms. Foggie was not able to perform the material and substantial duties of her own occupation.

18. On August 17, 2008, the Plan's definition of disability changed and Ms. Foggie was only entitled to benefits if she could not perform "Any Occupation," as that term is defined in the Plan.

19. Under the "Any Occupation" definition of "Disability" the Plan continued to certify that as of August 17, 2008, Ms. Foggie was disabled and unable to "work at any reasonable occupation."

20. On November 20, 2018, after the Plan had certified for over twelve years that Ms. Foggie continued to be disabled and that she was unable to work Any Occupation, Lincoln, on behalf of the Plan, issued a letter terminating her LTD benefits effective December 9, 2018, finding that after being out of work for nearly 13 years she was now fully employable as either an "Information Clerk" or "Gate Guard."

21. Ms. Foggie has a Twelfth-Grade education.

22. Prior to becoming disabled, Ms. Foggie worked for the Red Cross as a Tech II Phlebotomist from 2003-2006.

23. No further information, other than the two-word job titles and associated National Mean Monthly Wages, was provided by Lincoln to explain or support its determination that 1) "Information Clerk" and/or "Gate Guard" were compatible with the activity restrictions and limitations Lincoln agreed Ms. Foggie had or 2) these jobs were compatible with Ms. Foggie's training, education and experience, including the experience of being out of the work force for 12 ½ years.

24. Ms. Foggie timely appealed the November 20, 2018 denial of her benefits.

25. By letter dated March 1, 2019, Lincoln affirmed its termination of Ms. Foggie's benefits, again finding that Ms. Foggie, a former Phlebotomist, could return to work full-time as an "Information Clerk" and/or a "Gate Guard."

26. The March 1, 2019 letter invited another appeal which Ms. Foggie timely filed.

27. By letter dated July 8, 2019, Lincoln again affirmed its denial of Ms. Foggie's benefits, again finding that Ms. Foggie could return to work full-time as an "Information Clerk" and/or a "Gate Guard."

28. At no time did Lincoln conduct an Independent Medical Examination of Ms. Foggie. None of Lincoln's medical reviewers met or spoke with Ms. Foggie.

29. Lincoln did not ask Ms. Foggie to participate in a Functional Capacity Evaluation.

30. Lincoln did not conduct any physical or social media surveillance to support its opinion that after fully meeting the Plan's definition of disability since 2006, Ms. Foggie was now improved enough to be able to return to full-time work.

31. Following the denial of benefits, Ms. Foggie sought and retained counsel.

32. By letter dated March 4, 2020, Ms. Foggie requested a complete copy of her claim file from Lincoln pursuant to her rights under ERISA.

33. On March 6, 2020, Lincoln provided a copy of Ms. Foggie's claim file which, while it included the documents that Lincoln obtained while it administered her claim beginning in December 2016, was missing nearly all the documents Ms. Foggie had submitted and prior claim administrators had used to determine that she had met the Plan's definition of "disability" during the time when Aetna and MetLife had administered LTD benefits for the Red Cross (2006 – 2016).

34. Ms. Foggie, again, on April 17, 2020, requested a copy of her complete claim file from Lincoln, explaining that the file that Lincoln provided on March 6, 2020 was missing the bulk of her records, including prior medical and vocational reviews that concluded Ms. Foggie was and remained disabled, from when Aetna and MetLife had administered her claim.

35. In her April 17, 2020 request, Ms. Foggie also sent a request to the Red Cross, notifying them that most of the claim file from 2006-2016 was missing and requesting a complete copy of her claim file.

36. On April 22, 2020, Lincoln responded to Ms. Foggie's request, stating that "The copy of the claim file sent to you at that time [in March 2020] included all documentation that we received when the claim was transferred from the prior carrier, MetLife."

37. As of the date of this filing, the Red Cross has failed to provide a complete copy of Ms. Foggie's claim file including all information from the prior carriers dating back to when Ms. Foggie first provided proof of claim in 2006.

## COUNT I - Wrongful Denial of Long Term Disability Benefits

38. At all times relevant, Ms. Foggie has met the Plan's definition of disability.

39. The Plan provides for lost income benefits.

40. Ms. Foggie timely gave notice of disability and applied for disability benefits under the Plan.

41. The Red Cross has violated the plain language of the Plan; 29 U.S.C. § 1133 (Claims procedure); and 29 U.S.C. § 1104 (fiduciary duties).

42. Ms. Foggie is entitled to long-term disability benefits under the Plan, including past-due benefits; future benefits; pre-judgment interest; post-judgment interest; and attorney's fees pursuant to ERISA.

43. Ms. Foggie is entitled to these benefits because the benefits are permitted under the policy issued by Red Cross; she has satisfied all conditions precedent to be eligible to receive the benefits and she has not waived or otherwise relinquished the entitlement to the benefits.

## COUNT II – Breach of Fiduciary Duties

44. In addition to breaching its fiduciary duties by wrongly denying Ms. Foggie's LTD benefits, *supra*, the Red Cross also breached its fiduciary duties by failing to ensure an error-free transition from claims administrator to claims administrator during the years when the Plan appointed a new claims administer.

45. As the Plan Administrator of the LTD Plan, the Red Cross owed Ms. Foggie fiduciary duties.

46. The Red Cross breached those duties by failing to ensure an error-free transition when it appointed new claims administrators.

47. In the transition from Aetna to MetLife to Lincoln, the claims administrators either lost or failed to provide Ms. Foggie's complete file when the Red Cross appointed a new claims administrator.

48. ERISA's regulations require that "…the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures …[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." (*See* 29 CFR § 2560.503-1(h)(2)(iv).)

49. Because most of the information submitted by Ms. Foggie relating to her claim was contained in the Aetna and MetLife claim files developed during the first 10 years of her disability claim administration, the failure to transfer this information to Lincoln, and Lincoln's ensuring failure to consider it when reviewing her claim, deprived Ms. Foggie of the full and fair review of her claim that ERISA requires.

50. Spoilation of the claim file also deprives this Court of the opportunity to review all the evidence that the Plan acceptd as proof of Ms. Foggie's disability for the first ten years of her claim.

51. ERISA's regulations also require employee benefit plans to establish and maintain reasonable claims procedures, and provide that "The claims procedures for a plan will be deemed to be reasonable only if…[t]he claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants." (*See* 29 CFR § 2560.503-1(b)(5).)

52. The plan provisions were applied in a manner that resulted in that approval of Ms. Foggie's claim for disability benefits initially and through the transition in the definition of disability and for the next 10+ years before her claim was terminated.

53. Spoilation of the claim file prejudices the Court's ability to determine whether the plan provisions have been applied consistently throughout Ms. Foggie's claim.

54. As the Plan Administrator, the Red Cross is fully responsible for the actions of its claims administrators.

55. By losing or failing to provide or failing to ensure an accurate transmission of Ms. Foggie's complete claim file to each newly appointed claims administrator, the Red Cross breached its fiduciary duties.

## RELIEF SOUGHT

Ms. Foggie respectfully requests that this Court enter an Order declaring the following:

1. No deference be granted to the decision of the Defendants to deny benefits.

2.        That she is entitled to long-term disability benefits under the policy.

3.        That she is entitled to payment of past-due long-term disability benefits and reinstatement to monthly benefits under The Plan.

4.        That she is entitled to payment of pre- and post-judgment interest.

5.        That she is entitled to payment of attorney's fees and costs.

Respectfully submitted,

*Rhea Foggie*
By Counsel

_____/s/_____
Benjamin W. Glass, III | VSB #23152
Benjamin W. Glass, III & Assoc., PC
3998 Fair Ridge Drive, #250
Fairfax, VA 22033
703-591-9829 phone | 703-783-0686 fax
Ben@BenGlassLaw.com

*Counsel for Plaintiff*