## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

Civil Action No. 1:21-cv-00001-RDA-JFA

RHEA FOGGIE,

Plaintiff,

vs.

AMERICAN NATIONAL RED CROSS LONG TERM DISABILITY PLAN,

Defendant.

---

### THE PLAN'S COMBINED BRIEF IN SUPPORT OF
### ITS MOTION FOR SUMMARY JUDGMENT AND
### RESPONSE TO FOGGIE'S MOTION FOR SUMMARY JUDGMENT
### ON THE ADMINISTRATIVE RECORD IN THIS ERISA CASE

---

Table of Contents...................................................................................................... i

Table of Authorities ................................................................................................. ii

I.      Introduction   .................................................................................................1

II.     The Procedural Nature of an ERISA Dispositive Motion ....................................3

III.    Statement of Facts .........................................................................................3

        A.      The Plan ...........................................................................................4

        B.      The Administration of Foggie's LTD Claim in 2006-2016.....................5

        C.      Liberty Life's Administration of Foggie's Claim for Continuing LTD Benefits ....6

                1.      Liberty Life's Investigation and Decision to End LTD Benefits................6

                2.      Liberty Life's First Appeal Determination .................................11

                3.      Liberty Life's Second Appeal Determination............................14

IV.     Argument .....................................................................................................15

        A.      The Court Should Apply the Abuse of Discretion Standard of Review ...............15

        B.      Liberty Life Reasonably Based Its Determinations on a Deliberate, Principled Reasoning Process and Substantial Evidence ........................................18

        C.      The "Missing" Aetna and MetLife Documents Should Not Be Part of the Administrative Record Concerning Liberty Life's Claim Review .......................26

        D.      Foggie Is Not Entitled to a Statutory Penalty Under 29 U.S.C. § 1132(c) ...........29

V.      Conclusion ...................................................................................................30

**CASES**                                                                          **PAGE**

*Bernstein v. Capitalcare, Inc.*, 70 F.3d 783 (4th Cir. 1995) ...................................16, 18

*Bess v. Mutual of Omaha Ins. Co.*, No. 2:11-143, 2011 U.S. Dist. LEXIS 134999
    (S.D. W. Va. Nov. 22, 2011) ..............................................................................22

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) ...........................20, 23

*Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335 (4th Cir. 2000) ..............................15, 22

*Boyd v. Trustees of the United Mine Workers Health & Retirement Funds*,
    873 F.2d 57 (4th Cir. 1989) ...............................................................................16

*Brogan v. Holland*, 105 F.3d 158 (4th Cir. 1997).........................................................23

*Chisholm v. KPMG Long Term Disability Plan*, No. 03-1531,
    2004 U.S. Dist. LEXIS 30577 (E.D. Va. Oct. 6, 2004) ...................................23

*Collins v. Unum Life Ins. Co. of Am.*, 185 F. Supp.3d 860 (E.D. Va. 2016) ..........17, 18

*Conkright v. Frommert*, 559 U.S. 506 (2010)................................................................15

*Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161 (4th Cir. 2013) ……………………..17

*Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) …………………………….17

*de Nobel v. Vitro Corp.*, 885 F.2d 1180 (4th Cir. 1989)................................................16

*Donnell v. Metropolitan Life Ins. Co.*, 165 F. App'x 288 (4th Cir. 2006)....................26

*Elliott v. Sara Lee Corp.*, 100 F.3d 601 (4th Cir. 1999) ...............................................22

*Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228 (4th Cir. 1997) ...............................23

*Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315 (4th Cir. 2008) ........18

*Fine v. Sun Life Assur. Co.*, 97 F. Supp.3d 799 (E.D. Va. 2015) ...................................3

*Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987)................................................16

*Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264 (4th Cir. 2002)...............25

*Graham v. Pactiv Corp. Benefits Comm.*, 301 F. Supp.2d 483, 497 (E.D. Va. 2004)..................30

*Griffin v. Hartford Life & Acc. Ins. Co.*, 898 F.3d 371 (4th Cir. 2018) .....................19, 22, 25, 27

*Hensley v. IBM*, 123 F. Appx 534 (4th Cir. 2004)......................................................26

*Lamb v. Hartford Life & Acc. Ins. Co.*, 862 F. Supp.2d 1342 (M.D. Ga. 2012) .........................25

*Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74 (4th Cir. 1993).....16

*Lown v. Continental Cas. Co.*, 238 F.3d 543 (4th Cir. 2001) ........................................22

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ...........................................15

*Moore v. Liberty Life Assur. Co. of Boston*, 129 F. Supp.3d 408 (W.D. Va. 2015)....................20

*Newport News Shipbuilding & Dry Dock Co. v. Cherry*, 326 F.3d 449 (4th Cir. 2003)..............18

*Niebauer v. Crane & Co., Inc.*, 783 F.3d 914 (1st Cir. 2015) .......................................23

*Piepenhagen v. Old Dominion Freight Line, Inc.*,
    395 F. App'x 950 (4th Cir. 2010) (unpublished) .............................................25

*Rego v. Westvaco Corp.,* 319 F.3d 140, 146-47 (4th Cir. 2003)......................................16

*Sapp v. Liberty Life Assur. Co.*, 210 F. Supp.3d 846 (E.D. Va. 2016) ........................................25

*Scott v. Eaton Corp. Long Term Disability Plan*, 454 F. App'x 154
    (4th Cir. 2011) (per curiam) (unpublished)................................................19, 20

*Spenrath v. Guardian Life Ins. Co.*, 564 F. Appx 93 (5th Cir. 2014)............................................24

*Spry v. Eaton Corp. Long Term Disability Plan*, 326 F. App'x 674
    (4th Cir. 2009) (unpublished) ...........................................................19, 20, 25

*Stanley v. Metropolitan Life Ins. Co.*, 312 F. Supp. 2d 786 (E.D. Va. 2004) ...............................15

*Tobey v. Keiter, Stephens, Hurst, Gary & Shreaves*, No. 3:13-cv-315,
    2014 U.S. Dist. LEXIS 1577 (E.D. Va. Jan. 7, 2014),
    *aff'd*, 585 F. App'x 837 (4th Cir. 2014).....................................................3

**STATUTES AND RULES**

29 U.S.C. §11132(c)..................................................................................29, 30

29 U.S.C. § 1133(1) ........................................................................................23

29 C.F.R. § 2560.503-1(f)(1) ..........................................................................23

29 C.F.R. § 2560.503-1(h)(3)(v) ......................................................................21

Defendant Life and Health Benefits Plan of the American Red Cross ("Plan") submits its combined brief in support of its motion for summary judgment and in response to the motion for summary judgment of plaintiff Rhea Foggie ("Foggie") on the administrative record [Dkt. #18] in this case regarding long term disability ("LTD") benefits under the Employee Retirement Income Security Act ("ERISA").

I.    **INTRODUCTION.**

This case brings before the Court the issue of whether the Plan's Claim Administrator, Liberty Life Assurance Company of Boston ("Liberty Life"), reasonably decided to end the payment of LTD benefits to Foggie after December 9, 2018.[1]  The American National Red Cross ("Red Cross") sponsors the Plan for the benefit of its employees and self-funds the LTD benefits.[2]  In her opening brief, Foggie inaccurately refers to the "Red Cross" or the "Plan" as having taken various actions relating to the claim.  Liberty Life as the Claim Administrator, not the Red Cross or the Plan, was solely responsible for the determination of Foggie's eligibility for continued LTD benefits.

Foggie argues that Liberty Life inexplicably ended the payment of LTD benefits to her. Foggie's arguments rest on ignoring the extensive evidence that Liberty Life conducted a full

---

[1] On May 1, 2018, Lincoln National Life Insurance Company ("Lincoln National") acquired Liberty Life.  Rec. 4.  After that date, correspondence and other documents in the record refer to both Liberty Life and Lincoln National.  For the sake of simplicity, the Plan has referred to the Claim Administrator consistently as Liberty Life in this brief.

[2] The Red Cross contracts with disinterested third parties to provide claim administration services to eliminate any appearance of a conflict of interest by separating the functions of claim decisions and claims payment.  Three companies acted as the Claim Administrator during the administration of Foggie's LTD claim:  Aetna Life Insurance Company ("Aetna") from 2006 to 2007, Metropolitan Life Insurance Company ("MetLife") from 2008 to 2016, and Liberty Life after 2017.

and fair review of whether Foggie continued to be eligible for LTD benefits under the Plan and that Liberty Life based its decision on substantial evidence developed during its careful review.

The omissions in Foggie's opening brief are striking. Foggie fails to mention the multiple communications that Liberty Life had with her and her treating physicians. Foggie fails to mention that Liberty Life obtained peer reviews from six independent physicians whose opinions supported Foggie's ability to return to work. Foggie fails to mention that some of her own treating physicians supported her ability to return to work. Foggie fails to mention the two appeal determination letters that Liberty Life issued, which upheld the decision to end LTD benefits. Foggie cannot avoid the significance of the evidence about Liberty Life's deliberate, principled reasoning process by ignoring it.

After the initial approval of the payment of LTD benefits to Foggie, the Plan permitted the continued payment of LTD benefits only if Foggie still satisfied the definition of disability. The approval of the payment of LTD benefits to Foggie in 2006-2017 did not establish Foggie's entitlement to receive continued LTD benefits. Based on its thorough investigation, Liberty Life found substantial evidence showing that Foggie was no longer disabled under the Plan's terms after December 9, 2018, and reasonably and correctly ended the payment of LTD benefits to Foggie in accordance with the Plan's terms.

The Plan conveyed discretionary authority to Liberty Mutual as the Claim Administrator, and, therefore, the Court should consider this case under the deferential abuse of discretion standard of review. Foggie argues for the application of the *de novo* standard of review based on the Plan documents in effect in 2006. Foggie has ignored language in the 2006 Plan documents that conveys discretionary authority to Aetna as the Claim Administrator in 2006. Regardless of

the language of the 2006 Plan documents, the Plan documents in effect at the time of Liberty Life's administration after 2017 delegated discretion to Liberty Life and should determine the relevant standard of review.

Liberty Life provided an objective, fair, and full review of whether Foggie continued to be eligible to receive LTD benefits. Liberty Life reasonably and correctly ended the payment of LTD benefits to Foggie, and, therefore, the Court should enter judgment in favor of the Plan.

## II.  THE PROCEDURAL NATURE OF AN ERISA DISPOSITIVE MOTION.

Although the parties have filed cross motions for summary judgment, the Court should not apply the standards of Rule 56. This Court has recognized that "in actions brought under ERISA, summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment … do not apply." *Tobey v. Keiter, Stephens, Hurst, Gary & Shreaves*, No. 3:13-cv-315, 2014 U.S. Dist. LEXIS 1577 at *3 (E.D. Va. Jan. 7, 2014), *aff'd*, 585 F. App'x 837 (4th Cir. 2014); *see also Fine v. Sun Life Assur. Co.*, 97 F. Supp.3d 799, 807 (E.D. Va. 2015). The Court should decide this case in a manner akin to an administrative appeal.

## III.  STATEMENT OF FACTS.

The administrative record (Foggie Rec. ("Rec.") 1-1418) contains the documents that Liberty Life in its capacity as the Claim Administrator responsible for the determination of claims for LTD benefits received, generated, or maintained relating to Foggie's claim.[3]

---

[3] The Plan submitted the administrative record to the Court from which it redacted personal identifying information pursuant to Fed. R. Civ. P. 5.4.  Dkt. #23.

A critical consideration for the Court will be whether Liberty Life as the Claim Administrator based the claim decision on a deliberate and principled process and substantial evidence in the ERISA administrative record. Foggie's discussion of the evidence in her opening brief is woefully deficient. The Plan's following discussion of the evidence in the ERISA administrative record will fully inform the Court about Liberty Life's review process.[4]

A. **The Plan.**

The Red Cross sponsors the Plan for its eligible employees and is the Plan Administrator. *See* Rec. 1236; 1262. The Red Cross self-funds the LTD benefits. Rec. 1399.

On January 1, 2017, Liberty Life became the Claim Administrator responsible for the administration of LTD benefits. *See* Rec. 19; *see also* Rec. 1340. In the Plan documents in effect at the time of Liberty Life's decision to end the payment of LTD benefits to Foggie, the Red Cross as the Plan Administrator:

> delegated to the applicable insurance company or professional administrative services provider with respect to a benefit the sole authority, discretion, and responsibility to determine claims for benefits, which includes interpreting the Plan and, as applicable, the insurance contract or document describing the terms of the benefit, and making factual decisions to decide whether and in what amount a benefit shall be paid. Such insurance company or administrative services provider is referred to as the 'Claim Administrator,' and shall make all determinations on both initial claims and appeals with respect to benefits. All of its decisions shall be final, except to the extent that they are appealed.

Rec. 1294. The Plan provides that "[c]laims for disability benefits are adjudicated solely by the Claim Administrator for such benefits" and that the Red Cross "as Plan Administrator plays no

---

[4] Foggie has argued that the Court should consider materials that her counsel obtained from Aetna and MetLife, which are not part of the administrative record before Liberty Life. This argument lacks merit. *See* part IV (C).

role in making decisions on claims for disability benefits, or the appeal of denied claims for

benefits." Rec. 1301; *see also* Rec. 1263; 1264.[5]

The Plan's definition of disability applicable to Foggie was:

> You will be deemed to be disabled while either of the following applies to you:
> - In the first 24 months of a certified period of disability:
>   You are not able, solely because of disease or **injury**, to perform the material duties of your own occupation; except, if you start work at a reasonable occupation you will no longer be deemed disabled.
>
> - After the first 24 months of a certified period of disability:
>   You are not able, solely because of disease or *injury*, to work at a **reasonable occupation**.

Rec. 1400 (bold font in original). The Plan defined "reasonable occupation" as "any gainful

activity for which you are, or may reasonably become, fitted by education, training, or

experience." Rec. 1416.

A claimant is eligible to receive LTD benefits "for only as long as, [the Claim

Administrator] determines that you are disabled ...." Rec. 1400; *see also* Rec. 1391; 1402; 1403.

A period of disability will end if the Claim Administrator "determines that you are not disabled."

*Id.*; *see also* Rec. 1403 (period of disability ends on the "date you cease to be disabled").

**B.      The Administration of Foggie's LTD Claim in 2006-2016.**

Foggie is a former employee of the Red Cross and a participant in the Plan. After

February 17, 2006, Foggie stopped work and submitted a claim for LTD benefits. At the time of

---

[5] Foggie argues that the Plan documents in effect in 2006 should determine whether the Red Cross conveyed discretionary authority to the Claim Administrator and that the 2006 Plan documents do not contain language sufficient to trigger the application of the abuse of discretion standard of review. The Plan disagrees with Foggie on both points. *See* part IV (A).

Foggie's initial claim for LTD benefits under the Plan, Aetna was the Claim Administrator.  On

October 10, 2006, Aetna approved the payment of LTD benefits to Foggie.  Rec. 330-32.  Aetna

informed Foggie that it would "periodically re-evaluate [her] eligibility" for LTD benefits.  Rec.

330; *see also* Rec. 330-31.  On January 1, 2008, MetLife replaced Aetna as the Claim

Administrator. Rec. 288. MetLife approved the continued payment of LTD benefits to Foggie

during its tenure as the Claim Administrator.

### C.      Liberty Life's Administration of Foggie's Claim for Continued LTD Benefits.

On January 1, 2017, Liberty Life replaced MetLife as the Claim Administrator

responsible for the Plan's LTD benefits.  Rec. 19-20.  On December 8, 2016, Liberty Life made

its initial entry about its takeover of Foggie's LTD claim, which included basic information

about the payment of LTD benefits since 2006 and the codes for Foggie's medical conditions.

Rec. 1247.  Liberty Life received 274 pages of documents from MetLife about the past

administration of Foggie's LTD claim, which included some Aetna materials from the inception

of the claim in 2006.  *See* Rec. 252-526.  On December 27, 2016, Liberty Life reviewed the

claim and approved the continued payment of the "takeover claim."  Rec. 1246.  Liberty Life

notified Foggie that it would be the new Claim Administrator responsible for "administering

[her] disability benefits under" the Plan.  Rec. 19; *see also* Rec. 1257.

### 1.      Liberty Life's Investigation and Decision to End LTD Benefits.

On February 20, 2017, Liberty Life performed an initial telephonic interview of Foggie.

Rec. 1256-57.  Liberty Life confirmed the information in the system about the history of

Foggie's LTD claim since her last day of work on February 17, 2006.  *Id*.  Foggie described her

current medical condition, identified her treating physician, and listed her medications. *Id*. Liberty Life informed Foggie that it would request updated medical records. Rec. 1257.

On February 20, 2017, Liberty Life also sent letters to Foggie's treating physicians that requested medical records from February 1, 2016 to the present. *See, e.g.*, Rec. 135-36. Liberty Life had numerous telephone conversations with the offices of Foggie's treating physicians about the medical records request. Rec. 1255-56. Liberty Life spoke with Foggie about medical records requests. Rec. 1255. Liberty Life obtained and reviewed the updated medical records from Foggie's treating physicians. On June 28, 2017, Liberty Life called Foggie about the status of the review of her LTD claim. Rec. 1256.

Liberty Life referred the medical records to a third-party vendor, R3 Continuum, to obtain independent physician peer reviews of the medical records concerning Foggie. R3 Continuum assigned the review to Dr. Lynne Fernandez, who is Board Certified in Physical Medicine and Rehabilitation, and Dr. William Jaffe, who is Board Certified in Internal Medicine and Cardiovascular Disease. Rec. 191; 207-09. Dr. Fernandez evaluated Foggie's neck, back, and knee pain as well as related conditions. Rec. 182-87. Dr. Jaffe assessed the evidence concerning Foggie's hepatitis C, hypertension, and type 2 diabetes. Rec. 202-06.

Dr. Fernandez provided a detailed summary of the medical records. Rec. 183-85. Dr. Fernandez cited, among other things, a March 3, 2017 statement of one of Foggie's treating physicians, Dr. Jenny Andrus, which reported light work to be reasonable for Foggie, and stated her agreement with Dr. Andrus. Rec. 185; *see also* Rec. 530-31 (Dr. Andrus' Attending Physician's Statement dated March 3, 2017 indicating that Foggie had "[s]light limitation of functional capacity; capable of light work"). Dr. Fernandez identified certain functional

restrictions and limitations to accommodate Foggie's medical conditions and concluded that Foggie could work full-time subject to the restrictions and limitations and being able to change positions every 1-2 hours. Rec. 186. Dr. Fernandez spoke with Dr. Craig Jenkins, a treating physician, who agreed with her conclusions based on his review of Foggie's chart. Rec. 189-90.

Dr. Jaffe confirmed the diagnoses of hepatits C, hypertension, and type 2 diabetes, but found no evidence of a functional impairment due to those conditions. Rec. 202.

On August 10, 2017, Liberty Life issued a determination letter ending the payment of LTD benefits. Rec. 42-46. Liberty Life based the decision on the evidence regarding Foggie's chronic hepatitis, hypertension, and type 2 diabetes and Dr. Jaffe's report about those conditions, but did not discuss Foggie's other conditions or Dr. Fernandez's report.

On August 18, 2017 and August 25, 2017, Foggie sent e-mails to Liberty Life appealing the adverse decision. Rec. 36-38. Foggie also had several telephone calls with Liberty Life to discuss her disagreement with the decision. Rec. 1253-55. Foggie stated that her chronic hepatitis, hypertension, and type 2 diabetes were not the cause of her disability, and that Liberty Life had based its decision on the wrong medical conditions. *Id*.

On August 22, 2017, Liberty Life summarized the state of information about the claim. Rec. 1242. Liberty Life cited the information in the reports received from Dr. Fernandez and Dr. Jaffe. *Id*. Liberty Life noted that the physical medicine and rehabilitation diagnoses were "not addressed" in its determination letter. *Id*. Liberty Mutual decided to reopen the LTD claim "based on the need to evaluate impairment due to [physical medicine and rehabilitation diagnoses] and obtaining [a] TSA." *Id*.

On August 22, 2017, Liberty Life informed Foggie about the decision to reopen the claim. Rec. 1252-53. Liberty Life told Foggie that it would "obtain updated records and will have updated medical review once the records are received." *Id*. Foggie stated that she would obtain updated medical records from her treating physicians. *Id*. Foggie also commented on her conditions. *Id*. Liberty Life and Foggie had follow up communications about the collection of updated medical records. Rec. 1149-51; 1152-53; 1251-52.

Liberty Life referred the medical records to a third-party vendor, MLS National Medical Evaluation Services ("MLS"), to obtain a third independent physician peer review. MLS assigned the review to Dr. Fargo Nassim Khoury, who is Board Certified in Physical Medicine and Rehabilitation. Rec. 152-56. Dr. Khoury submitted a peer review report dated October 27, 2017. Rec. 211-14. Dr. Khoury reviewed the medical records covering 2016-2017 regarding Foggie. Rec. 211-12. Dr. Khoury identified various restrictions and limitations to accommodate Foggie's medical conditions and stated that "[w]ithin these restrictions [Foggie] can work full time in a sustained capacity." Rec. 213.

On November 7, 2017, Liberty Life prepared a Transferable Skills Analysis ("TSA"). Rec. 1227-29. Before issuing the TSA, the Vocational Consultant spoke with Foggie by telephone to obtain more information about her work history. Rec. 1239. The Vocational Consultant "reviewed the claim file and researched standard vocational resources including the Dictionary of Occupational Titles (DOT), Occupational Outlook Handbook (OOH), Occupational Information Network (O*NET)/Standard Occupational Classification (SOC) coding system, Guide for Occupational Exploration (GOE) and Internet job boards." Rec. 1227. The Vocational Consultant evaluated Foggie's employability based on her education, training,

work experience, and the functional restrictions and limitations that Dr. Khoury had assigned to her. Rec. 1227-29. The Vocational Consultant identified two occupations within Foggie's "education, training, and physical capacities." Rec. 1229.

On September 26, 2018, Liberty Life discussed the TSA with the Vocational Consultant and found that the occupations and wages identified in the TSA "are viable." Rec. 1238. On September 29, 2018, Liberty Life again requested updated medical records from Foggie's treating physicians. Rec. 1238. On October 10, 2018 and October 17, 2018, Liberty Life received the updated medical records. Rec. 1237-38.

Liberty Life referred the updated medical records to a third-party vendor, Dane Street, to obtain a fourth independent physician peer review of the medical records. Rec. 1237. Dane Street assigned the peer review to Dr. Howard Grattan, who is Board Certified in Physical Medicine and Rehabilitation and Pain Management. Rec. 145-46.

On October 30, 2018, Dr. Grattan submitted his peer review report. Rec. 215-20. Dr. Grattan summarized in detail the updated medical records concerning Foggie's condition in 2018. Rec. 215-17. Dr. Grattan found that Foggie's chronic pain syndrome, neck pain, chronic knee pain, lumbar spondylosis, and chronic back pain supported functional restrictions and limitations. Rec. 218. Dr. Grattan concluded that "[f]rom the current time and ongoing, [Foggie] would have the capacity to sustain full time employment" subject to certain restrictions and limitations to accommodate her medical conditions. Rec. 219. Dr. Grattan found that Foggie did not have any restrictions relating to sitting, reaching, fingering, or handling. *Id*.

Based on its review of the updated medical records, Dr. Grattan's independent peer review report, and the TSA, Liberty Life concluded that Foggie was no longer disabled under the

Plan.[6]  Rec. 1236-37.  On November 20, 2018, Liberty Life issued its determination letter that Foggie no longer satisfied the Plan's definition of disability.  Rec. 47-55.

## 2.    Liberty Life's First Appeal Determination.

On November 28, 2018, Foggie called Liberty Life about the adverse claim determination.  Rec. 1250-51.  Liberty Life advised Foggie to submit a letter about her intention to appeal the decision.  *Id*.  On November 28, 2018, Foggie sent a note to Liberty Life about her intention to appeal.  Rec. 27.  On January 8, 2019, Liberty Life confirmed that Foggie was "in the process of gathering information to submit with [her] formal request for review" and that it was awaiting the final appeal submission.  Rec. 3.    On January 24, 2019, Liberty Life reconfirmed that it had not begun the appeal review pending its receipt of Foggie's final appeal. Rec. 5.  On January 29, 2019, Liberty Life confirmed that it had received Foggie's appeal and had begun its review of the appeal.  Rec. 7.  On January 29, 2019, Liberty Life also called Foggie to discuss the appeal.  Rec. 1250.  Liberty Life went over the records that it had received to confirm its receipt of everything.  *Id*.  Foggie said that the claim determination letter had "a lot of incorrect information."  Rec. 1250.  Liberty Life "assured [Foggie] that on appeal review, [the] assigned [Appeals Review Consultant] would be doing a fair and detailed review on initial claim and new information to make a valid and fair appeal outcome."  *Id*.

As part of its review of Foggie's appeal, Liberty Life referred the medical record to a third-party vendor, Professional Disability Associates ("PDA"), to obtain a fifth independent

---

[6] Dr. Grattan's conclusions were consistent with those of Dr. Khoury, and therefore, the TSA remained valid.

-11-

physician peer review. PDA assigned the peer review to Dr. Michelle Alpert, who is Board

Certified in Physical Medicine and Rehabilitation. Rec. 157-65.

In her detailed report, Dr. Alpert summarized the medical records and the treating

physicians' opinions about Foggie's restrictions and limitations. Rec. 175-78. Dr. Alpert spoke

with Foggie's physician, Dr. Jeremy Williams. Rec. 177; 169-71. Dr. Williams told Dr. Alpert

that Foggie did "appear to be in some pain by the time she reached his office, but her discomfort

is vague, of a chronic nature." *Id*. Dr. Williams reported that Foggie "is able to stand and sit

without difficulty and has no issues with her upper extremities." *Id*. Dr. Williams did not

identify any functional or physical impairments. *Id*.

Dr. Alpert found that:

> for many years, and certainly from December 9, 2018 on, Ms. Foggie has had no
> evidence of neurologic deficits on examination nor any functional or physical
> impairments. Certainly, it is true that after her knee surgeries in 2007 and 2011,
> and her cervical spine surgery in 2016 she had some restrictions and limitations
> related to her post-operative recovery and rehabilitation, but these were only
> temporary. Since that time, her complaints of pain affecting various body parts
> have persisted, but no imaging studies have shown any clinical[ly] significant
> abnormalities including several MRIs of her entire spine. In 2015 she even had a
> triple phase bone scan to confirm the lack of prothesis loosening in her knees due
> to incessant complaints of pain and locking. Similarly, in September 2017 she
> was again seen by Orthopedics in consultation for the same issues: pain, popping
> sensations, and feelings of her knees locking. Her exam revealed no gross
> instability and her strength was preserved. X-rays showed no abnormalities of the
> hardware. Infectious work-up was also initiated and was negative. The treatment
> recommendation was again for physical therapy and pain management.
>
> Her treating providers have documented that her gait can be mildly atalgic, but
> her strength is normal. She has had no abnormalities in her sensory exam, and
> she has symmetric reflexes. Despite some fluctuating tenderness in various
> muscles at different times, her examinations have remained relatively normal.
> Her prior disability forms overstate her limitations, for example, in 2016 she was
> said to be able to lift only five pounds frequently and only capable of less than
> sedentary activity. The evidence to support this recommendation is unclear.

However, in October 2018, although Ms. Foggie described her continued limited ability to sit, stand, and walk in Liberty Mutual's Activity Questionnaire, she also documented that she was now doing her household chores including vacuuming, laundry, and grocery shopping—quite a functional improvement and significant progress.

From December 9, 2018 (and likely earlier) and continuing, Rhea Foggie has had the ability to return to full time work capacity without any supported restrictions or limitations. She is ambulatory, can do her self-care, and has recently reported her ability to do more physically challenging activities like laundry. She does continue to complain of variable pain affecting different body parts, but she has no accompanying neurologic deficits and no resultant functional impairments. Pain alone does not support disability and Rhea Foggie's main issue is chronic pain syndrome. In fact, returning to work and regular productive activities would likely be effective management for her unrelenting pain complaints and fibromyalgia.

Rec. 179. Dr. Alpert noted that Foggie's physician, Dr. Williams, and she "both agreed that Ms. Foggie could return to full time work with no need for restrictions and limitations, and that this regular activity might actually be beneficial for her chronic pain syndrome." Rec. 180. Dr. Alpert stated that Foggie's "pain complaints should have minimal to no impact on her occupational functioning given her lack of neurologic deficits and her preserved ability to stand, walk, and sit, which has been documented in the medical records and confirmed by Dr. Williams in our teleconference." Rec. 180-81.

On March 1, 2019, Liberty Life issued its first appeal determination. Rec. 56-64. Liberty Life summarized in great detail the grounds for its decision to uphold the determination to end the payment of LTD benefits.[7] Id. Liberty Life concluded that although Foggie "may continue to experience some symptoms associated with her condition," the available evidence did not

---

[77] Based on Dr. Alpert's opinion, Liberty Life moved the date of the end of benefits from November 21, 2018 to December 9, 2018. Rec. 56 and 61; see also Rec. 179 (Dr. Alpert's opinion).

support the existence of "symptoms … of such severity, frequency, and duration that they resulted in restrictions or limitations rendering [Foggie] unable to perform the fulltime duties of 'any reasonable occupation.'" Rec. 61.

### 3. Liberty Life's Second Appeal Determination.

On May 4, 2019, Foggie submitted a second appeal. Rec. 32-35. On May 7, 2019, Liberty Life acknowledged the second appeal and the beginning of the appeal review. Rec. 12. On June 6, 2019, Liberty Life notified Foggie of its need for a time extension to complete the review of the second appeal. Rec. 17.

In its second appeal review, Liberty Life referred the medical record to a third-party vendor, Network Medical Review Co., Ltd. ("NMR"), to obtain a sixth independent physician peer review. NMR assigned the peer review to Dr. Ephraim Brenman, who is Board Certified in Physical Medicine and Rehabilitation and Pain Medicine. Rec. 147-51.

Dr. Brenman reviewed and evaluated the medical records concerning Foggie's condition. Rec. 195-98. Dr. Brenman identified various restrictions and limitations that Foggie would need in an 8-hour workday. Rec. 198. Dr. Brenman concluded that Foggie's self-reports of pain were not consistent with her documented medical conditions. Rec. 199. Dr. Brenman found that Foggie "has the ability to sustain full time capacity within the identified restrictions and limitations from 12/10/18 forward." *Id*. Dr. Brenman noted that Foggie "has no neurological deficits on examination," no findings of cervical or lumbar radiculopathy on exam," and no evidence of "any significant problems with the hardware or the implants" in her knees. *Id*.

On July 8, 2019, Liberty Life issued the second appeal determination.  Rec. 65-75.

Liberty Life quoted extensively from the independent physician peer reviews of the medical

evidence.  Rec. 67-72.  Liberty Life stated that:

> Our role in reviewing your file is to determine whether your medical condition
> and the medical documentation contained in your file supports that you are unable
> to perform any gainful activity for which you are fitted by education, training or
> experience beyond December 9, 2018.  We are not required to ensure the
> availability of these occupations or that you return to active employment with
> your former employer in the same or different position.

Rec. 72.  Liberty Life again concluded that the evidence did not support the existence of

functional impairments preventing Foggie from returning to work after December 9, 2018 and

upheld the decision to end the payment of LTD benefits.  Rec. 73.

## IV.    ARGUMENT.

### A.    The Court Should Apply the Abuse of Discretion Standard of Review.

The claim and appeal determinations at issue occurred in 2018 and 2019 when Liberty

Life as the Plan's Claim Administrator determined that Foggie was no longer eligible for LTD

benefits.  The Plan documents in effect at the time of Liberty Life's decisions expressly

delegated discretionary authority to Liberty Life.  Rec. 1294; 1340.  This discretionary authority

language triggers the application of the abuse of discretion standard of review.  *See*, *e.g.*,

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Booth v. Wal-Mart Stores, Inc.*,

201 F.3d 335, 341 (4th Cir. 2000); *Stanley v. Metropolitan Life Ins. Co.*, 312 F. Supp. 2d 786,

790 (E.D. Va. 2004); *see also Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (deferential

review is essential to achieving ERISA's underlying goals and "preserv[ing] the 'careful

balancing' on which ERISA is based.") (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)).

Foggie argues that the applicable Plan document should be the one in effect at the start of her disability in 2006 and that the 2006 version of the Plan does not contain a grant of discretion. This argument fails for two reasons.

First, the version of the Plan in effect in 2006 conveyed discretionary authority to Aetna, which was the Claim Administrator in 2006. The Plan documents in effect in 2006 provide that:

- "Managed Disability Benefits are payable only for a period of disability which has been certified by Aetna." Rec. 1391.
- "The Plan will pay … [LTD benefits] for a period of disability caused by a disease or injury; but only if the period of disability has been certified by Aetna." Rec. 1400.
- "Certification of a period of disability will be denied if … Aetna determines that you are not disabled." Rec. 1400.
- "The benefits are payable … for as long as your period of disability continues to be certified by Aetna …." Rec. 1402.
- "The benefits are payable … for as long as your period of disability continues to be certified by Aetna …." Rec. 1403.
- "The start of a certified period of disability is determined by Aetna. Rec. 1403.
- "A certified period of disability ends on … [t]he date certification of the period of disability by Aetna ends, and the period of disability is not recertified by Aetna." Rec. 1403.

The Fourth Circuit has held that "a plan's terms can create discretion by implication." *Boyd v. Trustees of the United Mine Workers Health & Retirement Funds*, 873 F.2d 57, 59 (4th Cir. 1989); *see also Rego v. Westvaco Corp.*, 319 F.3d 140, 146-47 (4th Cir. 2003); *Bernstein v. Capitalcare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995); *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74 (4th Cir. 1993); *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187 (4th

Cir. 1989). The Fourth Circuit does not require "specific words or phrases" to grant discretion. *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 165 (4th Cir. 2013).

The repeated references to Aetna as the Claim Administrator responsible for certifying the period of disability and the payment of LTD benefits occurring only after the Claim Administrator's certification of disability show that the Red Cross conveyed discretionary authority to Aetna as the Claim Administrator. The use of the words "certify" and "certification" are significant and underscore the discretionary authority of Aetna as the Claim Administrator under the version of the Plan in effect in 2006.

Second, even if the 2006 version of the Plan documents did not convey discretionary authority to Aetna, the Red Cross could amend the Plan to delegate discretionary authority to Liberty Life as the new Claim Administrator beginning in 2017. It is well settled that an ERISA plan administrator is "generally free under ERISA for any reason at any time to adopt, modify, or terminate welfare plans." *Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 79 (1995). The Plan documents expressly provide that the Red Cross has the right to amend the Plan. Rec. 1264; 1395; 1412. The version of the Plan documents in effect at the time of the decisions of Liberty Life in 2018-2019 unquestionably granted discretion to Liberty Life. Rec. 1294; 1340. An amendment of the Plan documents to delegate discretionary authority to Liberty Life as the new Claim Administrator was enforceable, because it did not eliminate or reduce the benefit amount or definition of disability applicable to Foggie at the time of her disability in 2006.

Under the abuse of discretion standard of review, "the administrator's decision is granted deference and will be overturned only where the decision is an abuse of discretion." *Collins v. Unum Life Ins. Co. of Am.*, 185 F. Supp.3d 860, 870 (E.D. Va. 2016). The Court "will not

-17-

disturb a plan administrator's decision unless it is unreasonable." *Id*. The Claim Administrator's

determination will be reasonable, "if it is the result of a deliberate, principled reasoning process

and if it is supported by substantial evidence." *Bernstein*, 70 F.3d at 788. Substantial evidence

is "more than a scintilla but less than a preponderance." *Collins*, 185 F. Supp.3d at 870-71

(quoting *Newport News Shipbuilding & Dry Dock Co. v. Cherry*, 326 F.3d 449, 452 (4th Cir.

2003)). The Court will consider multiple factors in the evaluation of a Claim Administrator's

decision for abuse of discretion. *Booth*, 201 F.3d at 342-43. The Fourth Circuit has held that:

> Where an ERISA administrator rejects a claim to benefits on the strength of
> substantial evidence, careful and coherent reasoning, faithful adherence to the
> letter of ERISA and the language in the plan, and a fair and searching process,
> there can be no abuse of discretion—even if another, and arguably a better
> decisionmaker might have come to a different, and arguably a better, result.

*Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 325-26 (4th Cir. 2008). Liberty

Life provided such a review of Foggie's claim.[8]

### B. Liberty Life Reasonably Based Its Determinations on a Deliberate, Principled Reasoning Process and Substantial Evidence.

In her opening brief, Foggie does not provide the full story of Liberty Life's

administration of her claim. A comparison of the Plan's statement of facts [part III above] with

Foggie's statement of facts [Dkt. #19 at 7-15] shows that Foggie has ignored almost all relevant

facts in her vain attempt to attack Liberty Life's reasonable and correct determination. Foggie's

case depends on cherry picking the evidence to focus narrowly on only Liberty Life's TSA of

November 7, 2017, Liberty Life's claim determination of November 20, 2018, and some notes of

---

[8] Even if the Court were to apply the *de novo* standard of review, the outcome should be the
same—the entry of a judgment for the Plan upholding Liberty Life's determination.

MetLife from 2008.  Foggie cannot satisfy her burden of proof by ignoring the extensive evidence showing that Liberty Life reasonably ended the LTD benefits based on a deliberate and principled reasoning process and substantial evidence.  *Griffin v. Hartford Life & Acc. Ins. Co.*, 898 F.3d 371, 381-83 (4th Cir. 2018).

Foggie attacks Liberty Life for basing its review on medical records from 2016 forward.  This attack rests on a mischaracterization of the Plan's terms.  The fact that Foggie had been receiving LTD benefits since 2006 was not determinative of whether she continued to be eligible to receive LTD benefits in any subsequent year.  The Plan provided that a claimant would receive LTD benefits only for as long as she continued to be disabled under the Plan.  Rec. 1391; 1400; 1402; 1403.  When Aetna initially approved the LTD claim, Aetna informed Foggie that it would "periodically re-evaluate [her] eligibility" for LTD benefits.  Rec. 330; *see also* Rec. 330-31.  Foggie bore the burden to prove that she continued to be eligible to receive LTD benefits.  *Griffin*, 898 F.3d at 382.  Old medical records had no relevance to whether Foggie continued to be eligible for LTD benefits in 2017 and beyond.  *See, e.g.*, *Scott v. Eaton Corp. Long Term Disability Plan*, 454 F. App'x 154, 160-61 (4th Cir. 2011) (per curiam) (unpublished) (upholding decision to end LTD benefits after claimant had received LTD benefits for ten years); *Spry v. Eaton Corp. Long Term Disability Plan*, 326 F. App'x 674, 679-81 (4th Cir. 2009) (unpublished) (upholding decision to end LTD benefits after claimant had received LTD benefits for five years).  Liberty Life reasonably and correctly obtained and focused on updated medical records from 2016 forward in its review of Foggie's eligibility for continued LTD benefits after 2017.

Foggie argues that nothing had changed between 2006 and 2018.  This argument is baseless.  By 2017, Foggie had recovered from her knee and spinal surgeries, which the medical

evidence showed to have been successful. The medical records showed no evidence of an impairment serious enough to disable Foggie from performing any reasonable occupation. Liberty Life had six independent physician peer review reports that supported Foggie's ability to work. The TSA had identified occupations within Foggie's capabilities. Some of Foggie's treating physicians supported Foggie's ability to work. This was all new evidence generated in 2017-2019, which supported Liberty Life's decision to end LTD benefits.

Foggie's erroneously argues that Liberty Life failed to consider her complaints of pain. The independent physicians considered and found that Foggie's pain did not prevent her from returning to work. Indeed, Dr. Alpert noted that "returning to work and regular productive activities would likely be effective management for her unrelenting pain complaints and fibromyalgia." Rec. 179. Dr. Andrus and Dr. Williams as treating physicians agreed that Foggie could work. Liberty Life reasonably evaluated Foggie's self-reported pain complaints and concluded that the pain complaints did not prevent Foggie from performing any reasonable occupation.

A hallmark of a full and fair review of an ERISA's claimant's eligibility for LTD benefits is the referral of the medical records for peer reviews by independent physicians. ERISA does not require a Claim Administrator to give deference to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831-34 (2003). A Claim Administrator may reasonably find the opinions of independent peer review physicians to be more persuasive than treating physicians' opinions. *Scott*, 454 F. App'x at 160; *Spry*, 326 F. App'x at 679-81. A Claim Administrator may consider the fact that "treating physicians may have a strong pro-claimant bias." *Moore v. Liberty Life Assur. Co. of Boston*, 129 F. Supp.3d 408, 426 (W.D. Va.

-20-

2015).  Before Liberty Life decided to end the LTD benefits, it used three different third-party

vendors to obtain peer reviews of the medical evidence by four independent Board-Certified

physicians (Dr. Fernandez, Dr. Jaffe, Dr. Khoury, and Dr. Grattan).  Significantly, neither

ERISA nor the Plan required Liberty Life to obtain these independent physician reviews before

making its claim determination, which underscores the Liberty Life's deliberate and careful

review.  In the two appeals, Liberty Life contacted two more third party vendors to obtain a new

independent physician peer review report in each appeal (Dr. Alpert and Dr. Brenman).[9]  The

Plan has summarized the independent peer reviews in the facts section of this brief and will not

repeat that discussion here.  The six independent physicians found that Foggie could return to

work subject to some accommodations for her conditions.  The six independent physician peer

reviews not only demonstrated the deliberate and reasoned nature of Liberty Life's process, but

also constituted more than substantial evidence on which Liberty Life based its determinations.

Foggie implies that the evidence received from her treating physicians uniformly

supported her continued disability in 2017-2018.  The evidence of the administrative record

shows that this is incorrect.  Treating physician Dr. Andrus indicated that Foggie was capable of

light work, which is more than sedentary.  Rec. 531.  Treating physician Dr. Williams agreed

with reviewing physician Dr. Alpert that Foggie could return to work.  Rec. 180.

Liberty Life was not required to accept Foggie's subjective complaints of disability in the

face of the objective medical evidence and the independent physician peer reports, which

provided substantial evidence of Foggie's ability to work.  *Griffin*, 898 F.3d at 382; *Lown v.*

---

[9] The ERISA regulations require obtaining medical reviews in the review of an appeal.  29
C.F.R. § 2560.503-1(h)(3)(v).

*Continental Cas. Co.*, 238 F.3d 543, 549 (4th Cir. 2001); *Bess v. Mutual of Omaha Ins. Co.*, No. 2:11-143, 2011 U.S. Dist. LEXIS 134999 at *23 (S.D. W. Va. Nov. 22, 2011). Nor was Liberty Life required to accept the opinions of Foggie's treating physicians. In assessing any conflict between the opinions of the treating physicians and the independent physician peer reviewers, "it was within the discretion of [Liberty Life as the Claim Administrator]—indeed it was the duty of that body—to resolve the conflicts, and … 'it is not an abuse of discretion for a plan fiduciary to deny … benefits where conflicting medical reports were presented.'" *Booth*, 201 F.3d at 345 (quoting *Elliott v. Sara Lee Corp.*, 100 F.3d 601, 606 (4th Cir. 1999)). In fact, the medical records of the treating physicians showed that the self-reports of Foggie and the disability opinions of treating physicians were not well founded. *See* Rec. 179 (Dr. Alpert's analysis of the medical evidence). The peer review physicians identified appropriate limitations that would allow Foggie to return to work. Furthermore, at least two of Foggie's treating physicians, Dr. Andrus and Dr. Williams, agreed that she could return to work. Liberty Life reasonably chose not to accept Foggie's self-reports of no work capacity and the opinions of her treating physicians, which were dependent on the acceptance of Foggie's unreliable self-reports. *See, e.g.*, *Griffin*, 898 F.3d at 382.

Liberty Life made mistakes during its administration of Foggie's LTD claim, but they were neither material nor detract from the reasonableness and thoroughness of the review process. First, Liberty Life failed to address the medical conditions at issue in its initial determination letter of August 10, 2017 despite having Dr. Fernandez's peer review report. Based on discussions with Foggie, Liberty Life recognized its mistake, reinstated LTD benefits, and conducted an additional review, which included the peer review reports of Dr. Khoury and

Dr. Grattan.  Liberty Life's reversal of the flawed determination of August 10, 2017 provides

evidence of the overall reasonableness and objectiveness of Liberty Life's review.  *Chisholm v.*

*KPMG Long Term Disability Plan*, No. 03-1531, 2004 U.S. Dist. LEXIS 30577 at 11 (E.D. Va.

Oct. 6, 2004).  Second, the claim determination letter of November 20, 2018 contained some

sloppy errors regarding the date on which the LTD benefits would end.  Rec. 47; 52.  These

errors did not detract from Liberty Life's accurate discussion of the medical records and the

grounds for the determination.  Rec. 48-52.  Liberty Life discussed the errors in the claim

determination letter with Foggie by telephone and stated that the appeal review would correct

any errors.  Rec. 1250.  This, in fact, occurred in Liberty Life's first and second appeal

determination letters.

Foggie argues that the claim determination letter failed to inform her fully of how to

appeal the decision.  This argument fails for three reasons.  First, the letter adequately notified

Foggie of the grounds for the decision to end benefits and put the Court in a position to review

the determination.  Second, even if the claim determination letter could have been drafted

differently, Foggie satisfied its obligations by substantially complying with ERISA and the

ERISA regulations.  *Ellis v. Metropolitan Life Ins. Co*., 126 F.3d 228, 237 (4th Cir. 1997);

*Brogan v. Holland*, 105 F.3d 158, 164-66 (4th Cir. 1997).  Liberty Life was not required to state

all reasoning for the determination and fully complied with ERISA and the ERISA regulations

by stating the "specific reasons" for the decision in the claim and appeal determination letters.

29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503-1(f)(1); *Nord*, 538 U.S. at 834 (no requirement to

discuss every piece of evidence); *see also Niebauer v. Crane & Co., Inc*., 783 F.3d 914, 928 (1st

Cir. 2015) ("the denial letter need not detail every bit of information in the record"); *Spenrath v.*

*Guardian Life Ins. Co.*, 564 F. Appx 93, 98 (5th Cir. 2014) ("[i]t would be impractical to require the plan administrator to mention each piece of evidence it considered in reaching its conclusion.").

Foggie's heavy reliance on the March 31, 2008 claim activity note of a MetLife vocational consultant is misplaced. *See* part IV (C). Neither the Plan nor ERISA required Liberty Life to follow the MetLife vocational consultant's conclusions in 2008. On the contrary, Liberty Life was obligated to review whether Foggie continued to be eligible for LTD benefits based on Foggie's condition at the time of the review. Liberty Life reasonably and correctly based its evaluation of Foggie's continued eligibility to receive LTD benefits on updated medical records from 2016-2018.

When Liberty Life was considering Foggie's continued eligibility for LTD benefits in 2017-2018, the updated evidence about Foggie's condition in 2017-2018 was the relevant evidence, not outdated evidence from 2008. When Liberty Life decided to end the payment of LTD benefits, it had the updated medical records and the peer review reports of four independent physicians, which were not before MetLife in 2008. When Liberty Life issued its two appeal determinations, it had the additional peer review reports of Dr. Alpert and Dr. Brenman, which were not before MetLife in 2008. These materials constituted new evidence on which Liberty Life reasonably based its decision to end LTD benefits regardless of the previous payment of

benefits.  *See*, *e.g.*, *Spry*, 326 F. App'x 679-80.[10]  Foggie's reliance on the 2008 notes lacks merit.

Foggie devotes much of her argument to the alleged deficiencies in the TSA.  Liberty Life was not required "to obtain vocational or occupational expertise in its evaluation of [Foggie's] claim."  *Piepenhagen v. Old Dominion Freight Line, Inc.*, 395 F. App'x 950, 957 (4th Cir. 2010) (unpublished).  Liberty Life could have relied on the updated medical records and peer review reports, which showed that Foggie was capable of work.  The fact that Liberty Life obtained the TSA is further evidence of its deliberate and careful review of Foggie's LTD claim. Well established law affirms the reasonableness of an ERISA claim administrator's reliance on the materials on which Liberty Life's Vocational Consultant based the TSA.  *See*, *e.g.*, *Gallagher v. Reliance Standard Life Ins. Co*., 305 F.3d 264, 272-73 (4th Cir. 2002); *see also Lamb v. Hartford Life & Acc. Ins. Co*., 862 F. Supp.2d 1342, 1355 (M.D. Ga. 2012).  Even though the occupations identified in the TSA might have "require[d] initial orientation did not disqualify them as suitable alternative occupations for which [Foggie] was qualified."  *Griffin*, 898 F.3d at 382.  Foggie has not cited any authority to support her contention that Liberty Life had an obligation "to show its work" in the TSA.[11]  Neither ERISA nor the ERISA precedent impose

---

[10] Based on this updated information, Liberty Life was not bound to continue LTD benefits due to the award of Social Security Disability Insurance ("SSDI") benefits to Foggie in 2007, which Liberty Life discussed in its determination letters.  *Spry*, 326 F. App'x 680; Rec. 53; 60; 72.

[11] Foggie's reliance on *Sapp v. Liberty Life Assur. Co*., 210 F. Supp.3d 846 (E.D. Va. 2016). Sapp is distinguishable.  Unlike this case, *Sapp* dealt with the duties of the claimant's own occupation instead of any reasonable occupation.  Unlike this case, the administrator in *Sapp* did not consider the Dictionary of Occupational Title or other vocational resources.

such a requirement.[12] Liberty Life reasonably concluded that Foggie could perform any reasonable occupation based on the TSA, the multiple independent physician peer review reports, and the updated medical records. *Id.*

Foggie argues that she could not present evidence about her inability to perform the jobs identified in the TSA without more information. This argument ignores the fact that the critical evidence in that the updated medical evidence and the peer review physicians' reports showed that Foggie had the capacity to work. The TSA depended on that information. Foggie was aware of the grounds for Liberty Life's decision. Foggie failed to provide any medical evidence that overcame the substantial evidence showing her to be capable of performing any occupation.

Liberty Life engaged in a deliberate and principled consideration of whether Foggie continued to be eligible for LTD benefits. Liberty Life reasonably based its determination on substantial evidence in the form of the updated medical records, communications with Foggie and her treating physicians, the reports of the five independent peer review physicians, who considered the conditions at issue, and the TSA. The Court should enter judgment in favor of the Plan upholding Liberty Life's determination. *Donnell v. Metropolitan Life Ins. Co.*, 165 F. App'x 288, 295 (4th Cir. 2006); *Hensley v. IBM*, 123 F. Appx 534, 538 (4th Cir. 2004).

## C. The "Missing" Aetna and MetLife Documents Should Not Be Part of the Administrative Record Concerning Liberty Life's Claim Review.

The issue before the Court is whether Liberty Life reasonably decided that Foggie no longer was eligible for LTD benefits after December 9, 2018. The ERISA administrative record

---

[12] Indeed, the 2008 notes of the MetLife vocational consultant on which Foggie relies so heavily did not show MetLife's work.

concerning that issue consists of the materials that Liberty Life received, generated, and reviewed in its consideration of Foggie's eligibility for continued LTD benefits. That administrative record is before the Court. The Court will assess the reasonableness of Liberty Life's determination "on the basis of those facts known to the administrator at the time its decision was made." *Griffin*, 898 F.3d at 381.

Foggie's counsel obtained materials from Aetna and MetLife through subpoenas relating to their respective tenures as the Claim Administrator for the Plan's LTD benefits. Foggie has argued that the Court should include these "missing" materials in the ERISA administrative record. Foggie's argument lacks merit for three reasons.

First, in her opening brief, Foggie implies that Liberty Life's administrative record did not include any of the file materials from its predecessors as the Claim Administrator. This is erroneous. As previously noted, the administrative record contains 274 pages of documents that Liberty Life received from MetLife. These documents include correspondence, medical records, questionnaire submissions from Foggie, and other materials and fully informed Liberty Life about the history of Foggie's claim since 2006. *Id*.

Second, Liberty Life confirmed that the administrative record, which it produced, "included all documentation that we received when the claim was transferred from the prior carrier, MetLife." Rec. 1223. Although MetLife appears not to have included all documents in its possession in the file transferred to Liberty Life, there is nothing in the record to explain MetLife's omission. More importantly, Liberty Life would not have had any reason to consider the file received from MetLife to be incomplete. The file materials, which included medical

records back to 2006, coupled with the other information received from MetLife at the takeover, fully informed Liberty Life of Foggie's medical history and the history of the claim.

Third, the MetLife materials in the administrative record, which Liberty Life received from MetLife, contain information duplicating the so-called "missing" materials. In her opening brief, Foggie has cited only 11 pages out of the 729 pages of MetLife documents that she seeks to add to the administrative record. MetLife Rec. 34 is a note summarizing an e-mail that MetLife received from the Red Cross about Foggie's job duties. The information in this note duplicates the actual e-mail, which appears in the file that Liberty Life received from MetLife. *See* Rec. 504-05. MetLife Rec. 50-51 are claim activity notes about a MetLife vocational consultant's assessment of Foggie's employability. The bulk of the note consists of a summary of the restrictions and limitations received from one of Foggie's treating physicians, Dr. Dicpinigaitis, in a document dated March 14, 2008. Dr. Dicpinigaitis' actual submission of March 14, 2008 appears in the file that Liberty Life received from MetLife. Rec. 301-02. Although the conclusion of MetLife's vocational consultant does not appear in the administrative record, its absence is not material. *See* part IV (B). MetLife Rec. 51-52, 121, and 127-32 are short claim activity notes about MetLife's approval and payment of LTD benefits without any discussion or analysis of Foggie's eligibility, which materially duplicate the information that Liberty Life received at the time of the takeover about the payment of LTD benefits.

In short, the information in MetLife's claim activity notes that Foggie has cited is not "missing" from the administrative record. The file that Liberty Life received from MetLife contained this information and much more. Foggie has failed to justify adding 729 pages of

MetLife documents to the administrative record.[13]  Foggie's arguments about negligence and spoliation in the maintain of the administrative record are specious.

Foggie argues that she could not effectively appeal Liberty Life's determinations, because she did not have the "missing" Aetna and MetLife materials.  Foggie did not need the claim activity notes of Aetna or MetLife to know that those claim administrators had approved the continued payment of LTD benefits to her.  In fact, Foggie argued that Liberty Life's adverse claim determination was wrong based on the prior claim approvals of Aetna and MetLife.   The issue on appeal was Liberty Life's claim and appeal determinations in 2018 and 2018, not a decision of Aetna or MetLife in 2006-2016 based on a different set of evidence.

### D.    Foggie Is Not Entitled to a Statutory Penalty Under 29 U.S.C. § 1132(c).

Foggie argues that she is entitled to receive a statutory penalty of $110 per day for the Plan's alleged delay in producing the Plan documents.  This argument is frivolous.

On March 28, 2019, Foggie requested a copy of the Plan documents in connection with her second appeal.  Rec. 30.  On April 8, 2019, Liberty Life informed Foggie that she needed to request the Plan documents from the Red Cross as the Plan Administrator.  Rec. 15.  On April 9, 2019, the Red Cross sent a copy of the Plan documents to Foggie.  Rec. 124.

Foggie cites her counsel's letter of March 4, 2020 requesting the claim file and the Plan documents to support the statutory penalty claim, but Foggie's counsel sent this letter only to Liberty Life, not the Red Cross.  Rec. 81-83.  Liberty Life informed Foggie's counsel that he

---

[13] Similarly, Foggie has neither cited any of the eighteen pages of the "missing" Aetna documents, which are Aetna's claim activity notes, nor supported the addition of those documents to the administrative record.  Moreover, the Aetna claim activity notes merely confirm the approval of LTD benefits in 2006-2007 of which Liberty Life was aware.

must request the Plan document from the Red Cross. Rec. 93. On April 17, 2020, Foggie's counsel sent another letter to Liberty Life requesting documents, but again did not send the letter to the Red Cross. Rec. 86-87. Foggie's counsel never sent a written request to the Red Cross for the Plan documents, and a request for a plan document must be in writing as a condition precedent to a Plan Administrator's obligation to provide plan documents. *Graham v. Pactiv Corp. Benefits Comm.*, 301 F. Supp.2d 483, 497 (E.D. Va. 2004).

On March 25, 2021, the Plan produced a copy of the ERISA administrative record in this case to Foggie's counsel. The administrative record included copies of the Plan documents in effect in 2018, which the Plan considers to be the relevant documents. On June 4, 2021, Foggie filed a designation of additional materials in which she sought the Plan documents in effect in 2006. Dkt. #11. On June 18, 2021, the Plan responded that it would provide the Plan documents in effect in 2006. Dkt. #13 at 3 (§ 17). On June 29, 2021, the Plan's counsel sent copies of the 2006 Plan documents to Foggie's counsel. *See* June 29, 2021 e-mail attached as Exhibit A.

Whenever the Red Cross received a request for the Plan documents from Foggie or her counsel, the Red Cross responded in less than 30 days. Foggie has absolutely no basis for seeking the award of a statutory penalty under 29 U.S.C. § 1132(c).[14]

## V. CONCLUSION.

Liberty Life reasonably and correctly decided to end the payment of LTD benefits to Foggie after a deliberate and principled process based on substantial evidence. The Court should enter judgment in favor of the Plan upholding Liberty Life's determination.

---

[14] Foggie also has not asserted a claim under 29 U.S.C. § 1132(c) in her complaint. Dkt. #1.

Dated this 13th day of August 2021.

Respectfully submitted,

/s/Jack M. Englert, Jr.
Jack M. Englert, Jr., *admitted Pro Hac Vice*
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Phone: 303-290-1087
Email: jenglert@hollandhart.com

Jeremy B. Merkelson, VA Bar No. 78822
HOLLAND & HART LLP
901 K Street NW, Suite 850
Washington, DC 20001
Phone: (202) 654-6919
Fax: (202) 688-2921
Email: JBMerkelson@hollandhart.com

**ATTORNEYS FOR DEFENDANT THE LIFE AND HEALTH BENEFITS PLAN OF THE AMERICAN RED CROSS**

-31-

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2021, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Benjamin W. Glass, III
Benjamin W. Glass, III & Associates, PC
3998 Fair Ridge Drive, #250
Fairfax, VA 22033
Ben@BenGlassLaw.com
***Counsel for Plaintiff Rhea Foggie***

*/s/ Tammy L. Devlin*
Tammy L. Devlin

17201713_v1

-32-